MADISON COUNTY.—HON. A. D. KENNEDY, SURROGATE.—November, 1886.

COOK v. WOODARD.

*In the matter of the estate of* REUBEN P. WILCOX, *deceased.*

Upon a distribution of the proceeds of a disposition of a decedent's real property, made as prescribed in Code Civ. Pro., ch. 18, tit. 5, "debts not yet due" at the time of entry of the first decree are entitled, under id., § 2793, subd. 7, to equality in payment with those established by and recited in such decree.

An executor or administrator cannot be allowed, out of such proceeds, his expenses, incurred in defending an action brought against him by a creditor of the decedent, the provisions of Code Civ. Pro., § 2793,

subd. 5, being only intended to cover payments made by the executor or administrator on account of debts of the decedent and funeral expenses.

Upon the judicial settlement of the account of Orlando Woodard, as executor of decedent's will, it appeared that the personal estate had been nearly exhausted in expenses of administration, and that the proceeds of a sale of the realty, which had been made under the statute, were sufficient to pay only a small proportion of the debts. Questions arose as to the right of Rosina Cook, a creditor of decedent, to share in the distribution of those proceeds; also as to the executor's right to receive thereout the amount of certain expenses incurred by him in the administration; the facts as to which appear in the opinion.

A. N. SHELDON, *for executor.*

WHITE & UNDERHILL, *for Rosina Cook.*

E. H. LAMB, *in person, and for widow.*

THE SURROGATE.—[After deciding other matters] We now come to the discussion of the claim of Rosina Cook. It will be remembered that the decedent died the 28th day of March, 1881, and his will was admitted to probate June 20th of that year. At the time of his death, Mrs. Cook, of St. Johns, Michigan, was the owner and holder of a promissory note against him, of which the following is a copy:

" $3100.                        March 29, 1878.

Six years after date I promise to pay to the order of S. B. Daboll, three thousand one hundred dollars for the value received with use.

R. P. WILCOX."

Endorsed " S. B. Daboll."

The executor duly published a notice to creditors, and on the 18th day of March, 1882, the claim in question was duly presented to the executor and the same was disputed and rejected by him, and the rejection was accompanied by an offer to refer the claim under the statute, but the executor having refused to waive the objection that the note was not yet due, and at all times insisted that no action or proceeding could be commenced upon the same until it became due, a reference was deferred until the note matured. On December 29th, 1884, the claim was referred, under the statute, to three referees.

After a trial upon the merits the referees made their report, awarding to the plaintiff the full amount of her claim.   Their report was duly confirmed, and on May 17th, 1886, judgment was duly entered thereon for

| | |
|---|---|
| Damages. | $4861.30 |
| Costs | 406.58 |
| Judgment | $5267.88 |

The petition for the sale of the decedent's real estate was filed on May 22d, 1882. The petition refers to the claim in question as having been presented to the executor and rejected by him. Mrs. Cook was duly cited in this proceeding, but did not appear and made no effort to prove her claim upon the first hearing.

On March 17th, 1883, a motion was made before Surrogate Chapman to open the decree of July 25th, 1882, for the purpose of allowing Mrs. Cook to prove her claim and have the same established by and as of the date of said decree. The Surrogate denied this motion upon the ground that the claim was not

then due, and without prejudice to its renewal. The motion was renewed before the present Surrogate on July 22d, 1885, and was denied by him for want of jurisdiction, more than one year having elapsed since the entry of the decree.

Mrs. Cook's claim has been duly proved and established upon the hearing for distribution. The proceeds of the sale of the real estate are not more than sufficient to pay the claims established upon the first hearing. Upon these facts, a serious question arises as to the status of Mrs. Cook's claim, in this proceeding. Counsel for Mrs. Cook contends that she is entitled to share *pro rata* with the creditors whose claims were established upon the first hearing, and counsel for the executor urges that the claims established upon the first hearing are entitled to payment in full, before any portion of the proceeds can be applied to the payment of the claim in question.

The only serious question in the case arises from the fact that, at the time of the entry of the first decree, the claim in question was not yet due. The Code of Civil Procedure (§ 2758) provides: "The decree must determine and specify the amount of each debt established as a valid and subsisting debt against the decedent's estate, etc.;" and a "debt" is defined by the Code of Civil Procedure" (§ 2514, subd. 3) as follows: "The word 'debts' includes any claim or demand upon which a judgment for a sum of money or directing the payment of money could be recovered in an action; and the word creditor includes any person having such a claim or demand." In several places in chapter 18, claims which have not matured

are referred to, not as "debts" but always as "debts not yet due."

Mrs. Cook's claim was not due at the date of the first decree; she could not at that time be said to have a "valid and subsisting debt against the decedent's estate"; she could not then have instituted proceedings for the sale of the real estate; she could not have established her claim upon the first hearing. There is no provision anywhere in title 5 of chapter 18, for the proof of a debt not yet due, upon the first hearing, and Mrs. Cook, for that reason, was not bound to present her claim at that time, and laches cannot be attributed to her on account of her failure so to do. In this view of the case, the motions to open the decree should have been denied upon the merits, as unnecessary and superfluous.

Under the Revised Statutes (§§ 37, 38, 39, 43, 71, and 73) claims proven upon the second hearing stood upon an equal footing with those established by the first decree, and there was no preference or priority of payment, as between debts of the same class. But by the Code of Civil Procedure a radical change was introduced, and under the present law there can be no doubt that those claims which were established by the first decree are entitled to priority of payment over those proved upon the hearing for distribution, unless there exists a single exception, in favor of a "debt not yet due."

The serious question in this case, therefore, arises upon the construction of subd. 7 of § 2793 of the Code of Civil Procedure, which reads as follows:

"Out of the remainder of the money must be paid,

in full, the other debts, which were established and recited in the first decree, and were not rejected upon the second hearing; or if there is not enough for that purpose, they, or so much thereof as the money applicable thereto will pay, must be paid in the order prescribed by law for payment of a decedent's debts by an executor or administrator out of the personal assets, without giving preference to rents, or to a specialty or to any demand on account of an action pending thereupon; and paying debts not yet due, upon a rebate of legal interest."

The section is ambiguous and is inartificially drawn, and at the first glance there would seem to be doubt as to its true construction and meaning; but upon a careful examination of the section in connection with the revisers' notes and the former statute, we are convinced that the true meaning and intent will be better arrived at by transposing the words after the second semicolon ("and paying debts not yet due, etc.") to a position immediately after the words "second hearing," before the first semicolon, thus placing debts not yet due upon the same footing with those established by the first decree.   This is the only construction that gives the subdivision an intelligible meaning, and the last clause of the subdivision would be utterly meaningless under any other construction that has been suggested.

If the legislature had intended that a debt not yet due should be postponed to one which was due, they would have provided for its payment in subd. 8; but it appears that the only provision anywhere in the whole title for proving or for paying a debt, not yet

due is contained in subd. 7, and provision for its payment being made there, and there only, the conclusion is irresistible that it is to be paid with the other debts provided for in that subdivision.   We believe too that this construction will tend to do substantial justice in all cases.   Under the construction contended for by the counsel for the executor, creditors whose claims are not due at the death of a decedent will be entirely at the mercy of the executors or administrators, who, through favoritism or from enmity, could so institute and conduct the proceedings as to unjustly and unfairly discriminate between creditors whose claims are equally just and equally entitled to payment.

There is no reason why, in justness and fairness, a claim against a decedent's estate, which is due, should be preferred to another which is not due, and such is not the policy of the law.   This is emphatically indicated by the provisions of the Code (§ 2745), with reference to the payment of a claim not yet due upon the judicial settlement of the accounts of an executor or administrator.   Ample provision is here made for the protection of a creditor whose claim is not due, upon the same basis as one which is due, and while this is not controlling in this case, yet it is a strong indication that the legislature regarded the two classes of claims as equally entitled to payment.

We are strongly re-inforced in our opinion by the notes of the revisers.   Section 38 of the R. S. provided for the payment of all the decedent's debts in full, or, in case of a deficiency of assets, in proportion to their respective amounts.   Section 39 provides

that a creditor whose debt is not yet due shall receive his proportion with other creditors upon a rebate of legal interest, substantially the same as the last clause of subd. 7 of § 2793.

The revisers say: "Subdivision 7 has been taken from §§ 38, 39 and 73 of the R. S. *without material change*, except by the addition of the words which connect the provision with subdivision 8, and by the insertion of the provision with reference to the order of payment among creditors." From this language the fair inference is that there was no intention to change the *status* of a debt not yet due.

The revisers further say: "Subdivision 8 is new. It applies to creditors who come in after a sale as provided in § 2788. The regulation which it introduces appears to rest upon plain principles of justice, especially in view of the amendments to the preceding sections, giving to any creditor the right to institute original procedings: of his right which the amendments preserve to come in at any time before decree when proceedings have been instituted by another creditor: of the great publicity required at every step before the decree: and of the embarrassments which will result from the debts subsequently proved, if there is any deficiency. Under such circumstances creditors who neglect to come in until after the decree should be postponed even when no other property remains, to those who have been diligent to prove their debts in season, and have perhaps borne the expense and labor of the proceedings."

None of this reasoning is applicable to the case before us. As we have seen, Mrs. Cook was not, at

the date of the first decree a "creditor" and her claim was not then a "debt" within the meaning of the statute, and she could not thus have established it.   It cannot, therefore, be said that she was guilty of laches in not then attempting to establish it.   After a troublesome and expensive litigation, she has had the justice of her claim established by law; she has not neglected any proper or necessary step to bring her claim to the attention of the court; and now for the first time she has an opportunity to prove and establish it in this proceeding.   Every consideration of justice and equity, and we believe, the plain language and direction of the statute itself, require that she should now be placed upon an equality with the other creditors. The order of distribution will be made accordingly, and the claim of Rosina Cook (exclusive of costs) be paid *pro rata*, and in proportion to its amount with the other creditors.

Upon this accounting, we are asked by the executor, against the objection of Mrs. Cook's counsel, to allow out of the proceeds of the sale of the real estate, his expenses in defending the suit of Mrs. Cook amounting to about $600.00, as well as her costs and disbursements in defending the Wilcox action for dower and an accounting, amounting to $822.30.   In addition to the reasons heretofore stated for disallowing costs in the Wilcox case, we decline to do so for the additional reason that there is no provision of law which justifies or provides for their payment out of this fund.   Independent of any question as to the necessity or propriety of the large expenditure of the executor in litigations, it may be seriously doubted

whether, under any circumstances, these expenses could be charged upon the real estate, or provision made for their payment out of its proceeds. The law makes no provision for the sale of real estate to pay costs of litigations or the expenses of administration; on the contrary, it provides that the real estate of a decedent cannot be sold by the executor or administrator except for the payment of his debts and funeral expenses (Code, § 2749). Even where a judgment is obtained against an executor upon a disputed claim, the costs in such a judgment cannot be paid from the proceeds of the real estate (§ 2757). In short, the policy of the law seems to be to carefully guard against the payment, from the proceeds of the real estate, of any claim or demand except a debt owing by the decedent at the time of his death, his necessary funeral expenses, and the actual expense of the proceeding for the sale of the real estate. Were this not so, the Code would not have restricted the claims for which land must be sold to the payment of the decedent's debts and funeral expenses, but would have permitted the executor or administrator to sell the lands for any claims which he might have, arising from expenses incurred by him in the administration of the estate. The language of subd. 7 of § 2793 is imperative as to the class of debts which may be paid under its provisions. It says: "out of the remainder of the money, must be paid in full, the other debts, which were established and recited in the first decree, and were not rejected upon the second hearing," thus devoting the fund to the payment of certain specific

debts and preventing its diversion for any other purpose whatever.

It would be a useless expense, many times, for a creditor to prove his claim in such a proceeding if the statute did not afterwards protect his debt against the claims of executors for expenses incurred, either before or after he is cited to establish his debt in court. The decree of the Surrogate upon the first hearing becomes in fact a lien upon the proceeds of the sale of land, and thus secures payment of the debts established on the first hearing, if sufficient for that purpose, against any contingency. No mortgage or judgment could make it more secure than this decree of the court, against the subsequent acts of executors, or against those creditors who neglected to establish their debts when invited by the court to do so. The law has wisely appropriated this fund to the payment of those debts which the decedent created in his lifetime, and in our judgment we have no authority to use it for any other purpose. Nor is it any hardship upon, or injustice to an executor thus to hold the law to be, for before he prosecutes or defends an action, or subjects an estate to any expense beyond that for which the law has made provision, he has ample opportunity to ascertain the exact amount of the assets of the personal estate, and then to determine what his course shall be. In plain and unmistakable language, the law has said to him that the real estate of a decedent cannot be sold for any other purposes than those we have stated, and we know of no reason why he should not act accordingly. Had all the expenses which this executor has incurred in his litigations existed be-

fore any proceedings were taken to sell the land for the payment of debts, he would then have been compelled to see the land of the decedent ordered sold for the payment of debts existing at the death of Mr. Wilcox, for he could not have proved his claim in that proceeding, nor made use of it to institute measures for the sale of the decedent's land to procure its payment, so that, at no stage of his administration, has it been in the power of the court to aid him in the collection of his disbursements in the litigations in which he has been engaged out of the real estate or its proceeds, and his application to be repaid in this manner for this class of expenses must therefore be denied. It may be claimed that, under the provisions of subd. 5 of § 2793, these expenses may be allowed as against the real estate, but in our opinion this provision is only intended to cover payments made by an executor or administrator on account of debts of the decedent and funeral expenses.